In re John A. BAINE Donna
J. Baine, Debtors.

Thomas R. Noland, Trustee &
John A. Baine, Plaintiffs

v.

HSBC Auto Finance, Inc., Defendant.

Bankruptcy No. 06–33397.
Adversary No. 07–3128.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Sept. 9, 2008.

Thomas R. Noland, Statman, Harris & Eyrich, LLC, Dayton, OH, pro se.

John A. Baine, pro se.

Waymon B. McLeskey, Columbus, OH, for Defendant.

## DECISION OF THE COURT GRANTING SUMMARY JUDGMENT TO DEFENDANT HSBC AUTO FINANCE, INC. AGAINST PLAINTIFF–TRUSTEE THOMAS R. NOLAND AND PLAINTIFF–DEBTOR JOHN A. BAINE AND DENYING THE CROSS MOTION FOR SUMMARY JUDGMENT FILED BY PLAINTIFF–TRUSTEE THOMAS R. NOLAND

LAWRENCE S. WALTER, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This matter is before the court on the motion for summary judgment filed by Defendant HSBC Auto Finance, Inc. ("HSBC") [Adv. Doc. 16], the response and cross motion for partial summary judgment filed by Plaintiff–Chapter 7 Trustee Thomas R. Noland ("Trustee") and Plaintiff–Debtor John A.

Baine (jointly "Plaintiffs") [Adv. Doc. 17] and the reply filed by HSBC [Adv. Doc. 18]. The court also considers the parties' supplemental briefing memoranda [Adv. Docs. 39, 40 and 41] filed after the court allowed the Plaintiffs to amend the original complaint to add a cause of action.[1]

HSBC maintains that the Plaintiffs cannot prevail as a matter of law on their complaint seeking avoidance of HSBC's unperfected security interest in a pickup truck and seeking damages for violation of the automatic stay due to HSBC's repossession of the truck. HSBC argues that relief from stay and abandonment of the truck occurred by operation of law due to the failure of the Debtors to effectuate their statement of intention and the Trustee's failure to timely file a motion to prevent the abandonment. For the reasons set forth herein, the court agrees with HSBC and grants summary judgment in its favor.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are relevant to determining the parties' cross motions for summary judgment and are not in dispute. Prior to filing their Chapter 7 bankruptcy petition, Debtors John A. and Donna J. Baine ("Debtors") entered into a Loan Repayment and Security Agreement ("Note") with HSBC formerly known as Household Realty[2] to refinance the purchase of a 2000 Ford F–150 truck ("Vehicle") [Adv.

Doc. 16, Fields Aff. ¶¶ 3–5 and Ex. A to Fields Aff.]. The Note, executed on September 21, 2005 in the original principal amount of $12,881.25, granted to HSBC a security interest in the Vehicle *[Id.]*. HSBC failed to note its lien on the certificate of title for the Vehicle and, consequently, its lien remains unperfected [Adv. Doc. 16, Fields Aff. ¶ 6].

The Debtors defaulted on the Note by failing to make the October 21, 2006 required payment to HSBC and all subsequent payments *[Id.* ¶ 10]. The Debtors filed their Chapter 7 bankruptcy case on November 15, 2006 and the first meeting of creditors was held on January 11, 2007.

In their statement of intention filed pursuant to 11 U.S.C. § 521(a)(2)(A), the Debtors indicated that they intended to surrender the Vehicle to HSBC *[Id.* ¶ 8 and Ex. B. to Fields Aff.]. Despite this indication, the Debtors failed to surrender it [Adv. Doc. 16, Fields Aff. ¶ 11]. On or about March 1, 2007, HSBC repossessed the Vehicle *[Id.* ¶ 12].

On May 29, 2007, the Trustee and Debtor John A. Baine filed a complaint in this adversary proceeding asserting that HSBC violated the automatic stay by repossessing the Vehicle without first obtaining relief from the stay [Adv. Doc. 1]. HSBC admits that it did not file a motion for relief from the automatic stay prior to repossession [Adv. Docs. 5 and 38, ¶ 13]. However, the court also takes judicial notice of the fact that the Trustee did not file

---

1. On May 12, 2008, the Plaintiffs filed an amended complaint adding a cause of action to avoid HSBC's unperfected security interest pursuant to 11 U.S.C. § 544, § 550 and state law [Adv. Doc. 34].

2. The Plaintiffs take issue with the fact that the Note states that the lender is Household Realty rather than HSBC. The Plaintiffs argue that HSBC and Household Realty are separately registered corporations and, as such, HSBC has not proven that it is in fact the

creditor holding the Note. In response, HSBC filed an affidavit of Brenda Duncan, representative of HSBC, attesting to the fact that HSBC was formerly known as Household Realty and HSBC is the proper creditor holding the Note and security interest in the Vehicle [*see* Adv. Doc. 18, Duncan Aff. ¶ 4 and Ex. A to Duncan Aff.]. The Plaintiffs filed no contradictory evidence to dispute the facts in HSBC's properly filed affidavit.

a motion with the bankruptcy court in the Debtors' estate case asserting that the Vehicle had "consequential value or benefit to the estate" prior to HSBC's repossession.

### SUMMARY JUDGMENT STANDARD

The appropriate standard to address the cross motions for summary judgment filed in this adversary proceeding is contained in Fed.R.Civ.P. 56(c) and incorporated in bankruptcy adversary proceedings by reference in Fed. R. Bankr.P. 7056. Rule 56(c) states in part that a court must grant summary judgment to the moving party if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the nonmoving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–32, 106 S.Ct. 2548.

Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348.

### LEGAL ANALYSIS

#### A. BAPCPA's Changes to 11 U.S.C. § 521(a)(2) and § 362(h)

There is now direct linkage between a debtor's failure to perform a statement of intention and termination of the automatic stay, a linkage created by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23. Unchanged is the requirement in 11 U.S.C. § 521(a)(2)(A) that a debtor file a statement of intention indicating whether the debtor intends to retain or surrender property securing debt, a filing that must occur within thirty (30) days of the bankruptcy petition filing date or on or before the meeting of creditors whichever is earlier. 11 U.S.C. § 521(a)(2)(A). The law also continues to require that a debtor follow through by performing his or her intention with respect to such property although BAPCPA alters the time period in which a debtor must act by requiring the debtor to perform within thirty (30) days after the first date set for the meeting of creditors unless otherwise ordered by the court. 11 U.S.C. § 521(a)(2)(B). *See also Dumont v. Ford Motor Credit Co. (In re Dumont),* 383 B.R. 481, 485 (9th Cir.BAP2008) (discussing changes to § 521(a)(2) including the change in the deadline for performance of the debtor's stated intention).

Critical to the instant dispute is how BAPCPA impacts the automatic stay and changes the status of property securing debt upon a debtor's failure to either file a statement of intention or follow through with his or her intention within the time periods set by § 521(a)(2)(A) and (B). While § 521(a)(2)(A) and (B) do not gener-

ally alter a debtor or trustee's rights in property subject to a debtor's statement of intention, "BAPCPA section 521(a)(2)(C) now provides an exception, by way of new section 362(h)" to this general rule. *Dumont*, 383 B.R. at 486 (discussing BAPCPA's modifications to 11 U.S.C. § 521(a)(2)(C) and 11 U.S.C. § 362(h)). Post–BAPCPA, 11 U.S.C. § 362(h) provides that:

(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

11 U.S.C.A. § 362(h). This section clarifies that if a debtor does not file his or her statement of intention or follow through on it within the time periods codified in § 521(a)(2), and no motion of the type described in § 362(h)(2) (" § 362(h)(2) motion") is filed by a trustee, the automatic stay terminates with respect to the subject property and the property is no longer property of the estate.

In this case, no party disputes that the Debtors timely filed their statement of intention indicating that the property securing HSBC's debt, the 2000 Ford F–150 truck, was to be surrendered to the creditor. Also undisputed is the fact that the Debtors failed to follow through on their statement of intention by actually surrendering the Vehicle by the deadline codified in 11 U.S.C. § 521(a)(2). Furthermore, the Trustee did not file a § 362(h)(2) motion in the Debtors' estate case asserting that the Vehicle was "of consequential value or benefit to the estate" within the time period codified in 11 U.S.C. § 521(a)(2). Consequently, the court is left with the seemingly simple conclusion that, by operation of § 362(h), the stay terminated with respect to the Vehicle and it was no longer property of the estate thirty (30) days after the first meeting of creditors held on January 11, 2007.

## B. The Requirements of 11 U.S.C. § 521(a)(2) and § 362(h) Apply to Property Securing Debt Regardless of Whether the Creditor's Security Interest is "Perfected"

■ The Plaintiffs argue that the stay termination provision of § 362(h) did not take effect because HSBC is not a "secured" creditor. More specifically, the Plaintiffs assert that HSBC's failure to perfect its security interest by noting its lien on the Vehicle's certificate of title renders § 521(a)(2) and § 362(h) inapplicable. The court disagrees with the Plaintiffs' conception of the term "secured" as it is used in the Bankruptcy Code and Ohio law.

■ It is true that the requirements pertaining to a debtor's statement of intention in § 521(a)(2) and § 362(h) apply to property that "secures" a debt or a claim. *See* 11 U.S.C. § 521(a)(2) (discussing a debtor's duties with respect to debts secured by property of the estate); 11 U.S.C. § 362(h) (applicable to personal property securing in whole or in part a claim). Consequently, as the Plaintiffs correctly point out, these requirements are inapplicable to unsecured creditors of a debtor. However, a creditor obtains a security interest in property, and becomes "secured" with respect to the property, by entering into a security agreement. *See* 11 U.S.C. § 101(51) (defining "security interest" as a "lien created by an agreement"). State law determines the validity of the security agreement and whether the other requirements for enforcement of the security interest have been met. *In re QDS Components, Inc.,* 292 B.R. 313, 321 (Bankr.S.D.Ohio 2002); *In re De Vincent,* 238 B.R. 722, 725 (Bankr.N.D.Ohio 1999); *see also* Ohio Rev.Code § 1309.102 (defining "secured party" as a "person in whose favor a security interest is created or provided for under a security agreement

. . . .") and § 1309.203 (discussing requirements for a security interest to attach to collateral and become enforceable against the debtor). It is the security interest created by an agreement between a debtor and creditor that makes the creditor a secured party. In this case, the Plaintiffs do not dispute that the Debtors entered into a valid security agreement with HSBC and that the other prerequisites under Ohio law were met giving HSBC a security interest in the Vehicle.

■ HSBC's failure to note its lien on the certificate of title for the Vehicle does not change the fact that HSBC has a security interest and is a secured creditor; rather, the lack of notation of its lien on the certificate of title simply means that HSBC's security interest is not "perfected." Under Ohio law, notation of a lien on a motor vehicle's certificate of title is required to "perfect" a security interest in the motor vehicle and thereby make the security interest valid as to other creditors of the debtor. Ohio Rev.Code § 4505.13(B). *See also Rhiel v. Wells Fargo Financial Acceptance (In re Fields),* 351 B.R. 887, 890 (Bankr.S.D.Ohio 2006) (discussing the requirements for perfecting a security interest in a motor vehicle).

■ The purpose of a lien notation on a certificate of title or of any form of security interest perfection is to provide notice to third parties. *See Fields,* 351 B.R. at 892–93. Outside of bankruptcy, a lack of perfection would allow a subsequent creditor to obtain a lien having priority over that of the unperfected creditor. In bankruptcy, a trustee has powers pursuant to § 544 equivalent to such a subsequent creditor or bona fide purchaser without notice which gives a trustee the opportunity to avoid unperfected interests.

■ Obviously, lien avoidance is not self-effectuating. The Bankruptcy Code

contemplates trustee action pursuant to §§ 544, 545, 547, 458, or 549 and creates a statute of limitations for commencing such actions or proceedings in § 546(a). However, if a trustee misses the opportunity to avoid an unperfected security interest and abandons the property in question, the creditor retains its unperfected lien. *See, e.g., Keller v. CIT Group/Consumer Finance, Inc. (In re Keller)*, 229 B.R. 900, 903 (Bankr.S.D.Ohio 1998) (creditor could reform and enforce unperfected mortgage that was unavoided and abandoned); *In re Burchette*, 2002 WL 31051033, at *2 (Bankr.M.D.N.C. June 21, 2002) (trustee not allowed to reopen case to avoid defectively recorded deed of trust where real estate had already been abandoned).

While it is clear, then, that HSBC did not perfect its lien, it nevertheless has a security interest in the Vehicle which "secures" the debt. Consequently, the requirements of § 521(a)(2) and § 362(h) do apply.[3]

## C. The Operation of 11 U.S.C. § 362(h) Renders the Trustee Without Authority to Avoid HSBC's Lien Pursuant to 11 U.S.C. § 544

■ The Debtors' failure to follow through on their statement of intention coupled with the Trustee's decision not to file a § 362(h)(2) motion have a serious and substantive impact on the status of HSBC's security interest in the Vehicle in this case. Not only did the automatic stay terminate as to the Vehicle thirty (30) days after the first meeting of creditors, allowing HSBC to pursue state law remedies available to the creditor as of that date, but the statute further declares that the Vehicle "shall no longer be property of the estate." 11 U.S.C. § 362(h)(1). Because the statute renders the Vehicle no longer

---

**3.** The Plaintiffs cite two cases: *In re Johnson*, 2006 WL 2792315 (Bankr.M.D.N.C. Aug.14, 2006) and *Gigandet v. HSBC Auto Finance (In re Houseal)*, Adv. No. 306–0429A (Bankr. M.D.Tenn. Feb. 15, 2007) for the proposition that the requirements of 11 U.S.C. § 521(a)(2) and § 362(h) do not apply to creditors with unperfected security interests. However, both of these unreported decisions are limited to allowing trustees to continue preliminary investigation into whether the creditors at issue were really "secured" as required for the applicability of § 521(a)(2) and § 362(h) without the filing of a timely § 362(h)(2) motion. *Johnson*, 2006 WL 2792315, at *3; *Houseal*, Adv No. 306–0429A, at p. 5. Neither decision draws definitive conclusions as to how "secured" is to be defined in the relevant sections of the Bankruptcy Code and, to the extent these decisions suggest that the creditors holding unperfected security interests will not be considered "secured" for purposes of the applicability of § 521(a)(2) and § 362(h), the court respectfully disagrees for the reasons set forth in this opinion.

As an alternative argument, the Plaintiffs assert that 11 U.S.C. § 362(h) requires a creditor to have an "allowed" secured claim, as the term is used in § 506, before the provision operates to terminate the automatic stay and to cause property to be no longer property of the estate. For this proposition, the Plaintiffs again cite the *Johnson* case discussed above. 2006 WL 2792315. However, the reference to an "allowed" claim discussed in the *Johnson* case did not stem from the language of § 362(h), but, instead, from the language of 11 U.S.C. § 521(a)(6) applicable to creditors with "an *allowed* claim for the purchase price [of personal property] secured in whole or in part by an interest in such personal property...." 11 U.S.C. § 521(a)(6) (italics added). *See also Johnson*, 2006 WL 2792315, at * 2. It does not appear that § 521(a)(6) is applicable to HSBC's security interest in the Vehicle arising from a security agreement to refinance a vehicle loan nor do the parties argue its applicability. The statutory provisions that are applicable in this case, § 521(a)(2) and § 362(h), contain no language requiring the creditor to have an "allowed" secured claim prior to § 362(h) operating to terminate the stay and remove property from the estate. Therefore, the court finds the Plaintiffs' argument to be without merit.

property of the estate, it has the same effect as if the Trustee abandoned the property pursuant to 11 U.S.C. § 554. *See Dumont,* 383 B.R. at 486 (noting that § 362(h) terminates the stay as to personal property securing a claim and abandons that property). Indeed, the language of § 362(h)(2) providing an exception if the trustee can establish that the property is "of consequential value or benefit to the estate," closely tracks the abandonment standard of § 554 providing for abandonment of estate property that is "of inconsequential value and benefit to the estate." 11 U.S.C. § 362(h)(2); 11 U.S.C. § 554(a).

Because the operation of § 362(h) is functionally equivalent to an abandonment, it has the effect of divesting the estate of all its interests in the property. *See Stark v. Moran (In re Moran),* 385 B.R. 799, 2008 WL 1766874, at *6 (6th Cir. BAP April 18, 2008); *Keller,* 229 B.R. at 902 (discussing the effects of a technical or specific abandonment of property pursuant to 11 U.S.C. § 554). Once property is abandoned and removed from the estate, the trustee is divested of control of the property. *Moran,* 2008 WL 1766874, at *6; *Keller,* 229 B.R. at 902. Furthermore, several courts have held that abandonment is generally irrevocable as long as the property in question has been appropriately disclosed to the trustee. *In re Adair,* 253 B.R. 85, 88–89 (9th Cir.BAP2000); *Burchette,* 2002 WL 31051033, at *2. That divestiture of control upon abandonment of the property from the estate includes loss of a trustee's right to avoid an unperfected

lien pursuant to 11 U.S.C. § 544. *Keller,* 229 B.R. at 902–03; *Burchette,* 2002 WL 31051033, at *2.

That is precisely what happened in this case with relief from the stay and abandonment of the Vehicle occurring through the operation of § 362(h). Consequently, the Chapter 7 Trustee has lost the power to challenge and avoid HSBC's lien against the Vehicle pursuant to 11 U.S.C. § 544.[4]

### CONCLUSION

Thirty (30) days after the first meeting of creditors, the stay terminated as to the Vehicle and the property was no longer property of the estate pursuant to the operation of 11 U.S.C. § 362(h). Consequently, HSBC's repossession of the Vehicle after that date did not violate the automatic stay. Furthermore, that date signifies the estate's loss of all interests in the Vehicle as well as the power of the Trustee to avoid an unperfected lien against the Vehicle pursuant to 11 U.S.C. § 544. For these reasons, the court grants summary judgment to Defendant HSBC Auto Finance, Inc. on all claims in the Plaintiffs' complaint and denies the cross-motion for summary judgment filed by the Plaintiff–Trustee.

**SO ORDERED.**

---

**4.** The court realizes that this outcome may have negative consequences for the estate in this case. Such consequences may be avoided in future cases by the filing of a § 362(h)(2) motion by a trustee within the time period provided in § 521(a)(2). *See, e.g., In re Norton,* 347 B.R. 291, 297–98 (Bankr. E.D.Tenn.2006) (timely filed motion of Chapter 7 trustee coupled with court's determina-

tion that property had consequential value for the estate and the ordering of adequate protection to the creditor and delivery of the property to the trustee precluded termination of the automatic stay pursuant to § 362(h)). In fact, preventing such stay relief and abandonment is seemingly the sole purpose for allowing a trustee to file such a motion.